**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

**JOSEPH CANDELARIO**                                                                    CIVIL RIGHTS
                                    **Plaintiff,**                                        COMPLAINT
                                                                                          PURSUANT
                                                                                          TO 42 U.S.C. § 1983

                                                                                          Index No.:
                                                                                          Hon.

                        -against-


 **CITY OF NEW YORK, NEW YORK CITY**
 **POLICE DEPARTMENT, Detective Enrique Sanchez,**
 **Individually and in his official capacity, Detective Brian**
 **Checo, Individually and in his official capacity, Detective Thomas**
 **Taughran, Individually and in his official capacity, Officer Gomez,**
 **Individually and in his official capacity, Sargent Rojas, Individually**
 **and in his official capacity, Officer Juan Moreno, Individually and in**
 **his official capacity, Officer Elhadad, Individually and in his official**
 **capacity, CITY OF YONKERS, YONKERS POLICE DEPARTMENT,**
 **Sargent Bryant Pappas, Individually and in his official capacity,**
 **Officer Richard Devito, Individually and in his official capacity,**
 **Officer Salierno, Individually and in his official capacity.**


                                    **Defendants,**

------------------------------------------------------------------------x


Plaintiff, JOSEPH CANDELARIO alleges, by and through his attorney, RICHARD D. BORZOUYE, ESQ.:


## Introduction


1. Plaintiff, Joseph Candelario, brings this action against individual police officers, supervisors, and the City of New York and the City of Yonkers (N.Y.) and its respective police departments for damages arising out of a false arrest and wrongful imprisonment, and other unconstitutional policies and actions, and common law claims arising out of an unlawful stop by defendant police on

February 19 & 20, 2010 and his wrongful imprisonment and deprivation of constitutional and civil rights and due process thereafter until his release on or about January 13, 2011 .

## Jurisdiction

2. Plaintiff brings this action against defendants to redress the deprivation of rights secured plaintiff by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and the common law.

3. Plaintiff is a citizen of the State of New York. Each defendant is, upon information and belief, a citizen of the State of New York. The matter in controversy exceeds the statutory amount of $75,000.00.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, and 1343(a)(3), and 42 U.S.C. § 1983.

5. Plaintiff also invokes supplemental jurisdiction of this Court over plaintiff's state claims against defendants for common law violations pursuant to 28 U.S.C. § 1367 as the common law claims form part of the same case or controversy.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## Parties

7. Plaintiff is a resident of State of New York, County of Westchester.

8. Defendant City of New York operates and governs the New York City Police Department pursuant to the laws of of State of New York. Defendant City of Yonkers operates and governs the Yonkers Police Department pursuant to the laws of the State of New York.

9. Defendant Officers Gomez, Elhadad of NYPD's 50th Precinct, Detective Sanchez of the NYPD, shield #6921, Detective Thomas Taughran, shield # 5741, Sargent Rojas, Detective Brian Checo,

shield # 1406, Officer Moreno of the 34th Precinct of the NYPD, shield #21165 and Sargent Bryant Papas, shield #4, Officers Salierno and Richard Devito of the Yonkers (N.Y.) Police Department, City of Yonkers are sued both individually and in their official capacities. At all pertinent times, defendant officers and supervisors were employed by New York City Police Department and Yonkers (N.Y.) Police Department.

10. At all pertinent times, defendants acted under color of law, of a statute, ordinance, regulation, custom, or usage.

## Statement of Facts

12. On February 19, 2010 at a approximately 11 o'clock pm, plaintiff was in front of the Tex-Mex bar (located on South Broadway in Yonkers, N.Y.). Plaintiff was stopped, upon neither any reasonable suspicion or probable cause of any criminal activity or that plaintiff committed any crime, was unlawfully stopped by Sergent Pappas of the Yonkers (N.Y.) Police Department. Sgt. Pappas proceeded to ask plaintiff "What are you doing?". Plaintiff replied "I'm going into the bar" in which the plaintiff proceeded into the Tex-Mex bar. Plaintiff was wearing a gray sweater and not a hoodie and never left the Tex-Mex bar. Plaintiff, at all times herein was patronizing said establishment from 11pm until 4:30am, never having left said establishment at any time which several witnesses verified with police.

13. At approximately 4:30 am on February 20, 2010, two plain clothes policemen approached plaintiff and handcuffed him and placed him under arrest.  At no time did the two plain clothes police officers or any police officers at that time inform plaintiff what he was being arrested and charged with. Plaintiff was then taken to the Yonkers Police Detective Unit.

14. Plaintiff then arrived and he was questioned by police, while under the influence, without an attorney nor read his Miranda rights of his right to an attorney and his right to remain silent and was not free to leave at any time and was in a custodial interrogation.

15.  Plaintiff was interrogated about a shooting. Plaintiff responded that he did not know anything about a shooting nor was he involved in any shooting. Officers informed plaintiff that the NYPD

were coming to pick him up regarding a robbery in Manhattan and that he was under arrest for robbery. Plaintiff replied that he did not know anything about a robbery and that he was at the Tex-Mex bar in Yonkers, N.Y. all evening and had several witnesses.

16. At approximately 5:00 am, officers Brian Checo with his partner from the NYPD, 34th Precinct, came to pick up the plaintiff from Yonkers Police Department. NYPD officers proceeded to ask plaintiff, in a custodial interrogation, without reading him his Miranda rights or providing him with his Right to Counsel, asked plaintiff about a robbery in Manhattan. Detective Checo, now formerly of the NYPD, was arrested and (now convicted) in federal court in New Jersey on or about February 9, 2010 in New Jersey in connection with a one million dollar robbery of a perfumery. Detective Checo was an affiant in the illegal and constitutional warrant that was sworn and executed to search the vehicle. Detective Checo however, was not arrested for said crime he committed until March 9, 2010. Detective Checo, conspired with Yonkers and Bronx police to fabricate a false case on the plaintiff, and after he picked up the plaintiff from Yonkers Police Department  Plaintiff insisted that he did not know anything about as robbery and did not commit any robbery and had been at the Tex-Mex bar in Yonkers all evening and provided a list of several alibi's, all of whom verified plaintiff's whereabouts.

17. Upon information and belief, a robbery had been reported in Manhattan and police officers of the New York City Police Department (NYPD) responded at approximately 2:30 am on Saturday February 20, 2010 to El Tina Restaurant and Fish Market located on 500 West 207th Street.

18. Detective Howard and reporting Officer Herbert Wroten (NYPD) interviewed a girlfriend of the complaining witness, Priscilla Velásquez. Ms.Velasquez stated to police that her and her boyfriend, Johan Ramos, were eating in the El Tina Fish Market Restaurant at said location. Once eating at a table near the front entrance, Ms. Velásquez stated to police that Mr. Ramos excused himself from the table to go to the bathroom to wash his hands, located at in the rear of said restaurant. According to Ms. Velásquez, three males enter the restaurant, two of which stand by the entrance door, as one male entered the bathroom with her boyfriend. Ms. Velásquez stated to police that after around two minutes the male exists the bathroom and turns the bathroom light off. As the male passed her, she stated to police that she noticed that male was wearing her boyfriend's ring, shaped liked a horseshoe.

19. At this point, Ms. Velásquez further stated to police that she ran over to the bathroom door and it was locked. She then stated that she knocked on the door and that her boyfriend, Johan Ramos, open it. She stated that he was putting on his shoes and further stated that he told her that male pointed a gun at him and was told to take off his pants and sneakers, then took his money, jewelery and cellphone and told her to call the police.

20. In addition to her statement to police, Ms Velásquez and Mr. Ramos go outside and spot the perpetrator with two other males and that they all get into a white vehicle, NY Plate number EWV8684. She then stated to police that they proceed together in Mr. Ramos's car and follow the car on the FDR for 15-20 minutes through the Bronx, but then loose them.

21. At this point, officers from the NYPD arrive and bring both Ms. Valasequez and Mr. Ramos to the 34th Precinct and both shown photos by Sgt. Rojas of one of the males that was standing by the door in the restaurant who was wearing red, one who entered the restaurant with the male who robbed Mr. Ramos. Ms. Velásquez then informed police that the El Tina Fish Market Restaurant has cameras, which show pictures of the perpetrators. Perpetrator #1 is Ms. Velásquez's description of the perpetrator who entered the bathroom with Mr. Ramos. Perpetrator #2, in her brief description, is one of the perpetrators who stood by the entrance door of the restaurant. Ms. Velásquez stated to to police that she could not describe perpetrator #3. At this point, officers from the Bronx, NYPD officers Gomez and Elhaddad of the 50 precinct had the complaining witness and witness, then proceeded to Yonkers where they met Sergent Brain Pappas from the Yonkers Police Department they met in front of Sergent Pappas office at 28 Wells ave, Yonkers N.Y. The witness, Priscilla Velásquez, testified at the Wade hearing that she was shown, while in the back of the police car, some photos by the Bronx and Yonkers police and was coerced to believe and told that the plaintiff was the robber the officers overly suggested identified the plaintiff she was brought to the 34 precinct were she testified she was shown some more photos of the plaintiff by Sgt Rojas. All of the photos were shown before the plaintiff was put in a line up. At the Wade hearing the identification was proved to be suggestive and at said hearing the plaintiff was put in an additional photo array and the witness did not pick out the plaintiff which followed with the release of the plaintiff from Rikers Island where plaintiff had been wrongfully incarcerated for 9 months. On or about January 2011, all charges were dismissed against the plaintiff.

22. Upon information and belief, Sgt. Pappas, Officers Salierno and Devito of Yonkers Police

Department, had falsely accused and reported that the plaintiff, Joesph Candelario, along with co-defendant Justin Robinson, were walking towards and proceeded to enter a white Chevy Impala, NY license plate number EWV8684, the same vehicle that was reportedly involved in said robbery at the El Tina Restaurant located at 500 207th Street in Manhattan and reportedly drive south of their location (Tex Mex Bar, 299 Braodway, Yonkers, NY).

23. Said officers (Sgt.) Pappas, Salierno and Devito further reported that they ran said plate number and was registered to a Jonathan Lucre of 500 Van Courtland Park Ave. Said officers were notified by the NYPD via Officers Gomez and Elhaddad of the 50th Precinct that they had the robbery victim and witness. Officers Pappas, Salierno and Devito of the Yonkers Police Department met with Officers Gomez and Elhaddad in front of their office located at 28 Wells Street, Yonkers, NY.

24. The robbery victim, Johuan Ramos, informed Yonkers Police officers that a tall Hispanic, who was wearing a black leather rhinestone jacket, as well as a tall black male with a dark colored hooded sweatshirt, and a heavyset white male with a black and red varsity jacket robbed the victim of approximately $500, the black male producing a pistol and also demanding the victim's ring, watch, chain and cash, which the victim did supply.

25. At this point, Sgt. Pappas, officers Devito and Salierno falsely accuse, without any probable cause, that they supposedly knew the males that fit Mr. Ramos's description, stopping them just a short while before. Said officers the contacted Lt. Monaco and explain the situation.

26. Sgt. Pappas then responded to the Tex Mex Restaurant  along with officers Salierno and Devito. According to said officers, they observed co-defendant Justin Robinson attempting to enter a livery cab, wearing the same dark colored hooded sweat shirt he had on previously. Officer Devito went into the Tex Mex Restaurant to look for additional suspects an detained the plaintiff and an individual known as Randy Hernandez, who was wearing a black rhinestone jacket. At no time pertinent hereto did plaintiff ever engage in any conduct sufficient to warrant such a charge or any charge.

27.  Soon thereafter plaintiff was falsely arrested without probable cause. On or about February 20, 2010 at 1143 hours Detective Sanchez and Police Officers Moreno of the 34th Precinct of the NYPD, we present and conducted a lineup with suspect Justin Robinson. Seated as #3, along with 4

other fillers. The robbery victim, Mr. Johan Ramos, was brought into the viewing area of interview room #1 and was asked if he recognized anyone. Mr. Ramos stated without hesitation and identified #3, Justin Robinson. Mr. Ramos was asked where he recognized that person from and he stated from the restaurant and that he put a gun to his face. and four other fillers. The officers then had the victim, Johan Ramos view the lineup from the viewing area of interview room #1. Mr. Ramos, the actual robbery victim, did not recognize anyone from the lineup.

28. On February 20, 2010 at approximately 1149 hours said officers had witness Priscilla Velásquez view the same line up with the suspect Justin Robinson. The witness viewed the lineup and again without hesitation picked position #3, Justin Robinson. The witness stated that she recognized the person from the restaurant as the one who robbed her boyfriend, Johan Ramos.

29. On February 20, 2010 at approximately 1204 hours said officers conducted a lineup consisting of the plaintiff, Joseph Candelario and four other fillers. The plaintiff was asked what position he would like to sit in the lineup. Plaintiff stated position #4. Said officers had Johan Ramos view the lineup from the viewing area of the interview room #1. Mr. Ramos viewed the lineup but stated that he did not recognize anyone in the lineup.

30. On February 20, 2010 at approximately 1208, same said officers had witness Priscilla Velásquez view the same lineup consisting of the plaintiff, Joseph Candelario and the four other fillers. The witness looked over the lineup and then stated that she recognized position #4 from a camera at the restaurant, which was in black and white, not in color and did not physically eye witness him at the scene other than the monitor in the restaurant. Ms. Velásquez specifically stated to police that the other man covering the door was swearing a red seater. Ms. Velásquez picked out the plaintiff

31. Just prior to both lineups, officers from the 34th Precinct, Sgt. Rojas, NYPD, were personally given photos from Sgt. Pappas of the Yonkers Police Department and subsequently Sgt. Rojas showed photos to Mr. Ramos and Ms. Velásquez of the plaintiff and overly suggested and coerced both witnesses prior to viewing the lineup of the plaintiff. Consequently, Ms. Velásquez picked the plaintiff because of coercion and over suggestiveness by by the Yonkers Police Department, through Sgt. Pappas.

31. Several hours later on February 20, 2010, by affirmation of police officer Juan Moreno of the 34th Precinct of the NYPD, filed a felony complaint in which the plaintiff was falsely charged and arrested for a crime he did not commit. The plaintiff was falsely charged with Robbery in the First Degree pursuant to NY CPL 160.15 (2) and Criminal Possession of a Weapon in the Second Degree pursuant to NY CPL 265. (1) (b) and thereafter indicted for the aforementioned charges.

32. In his affidavit, Officer Moreno states that the 34th Precinct, at approximately 10:00 am, that he recovered a loaded 9 millimeter from the trunk of the vehicle, a white Chevy impala, NY license plate # EWV-8684 plaintiff was allegedly seen in hours before. Said vehicle was not registered to plaintiff and found on 200 Valentine Lane in Yonkers, NY.

32. Plaintiff was falsely arrested and charged for said crimes despite the fact that he, through his defense counsel, John J. Carney III, (filed on April 20, 2010, informed the Court and prosecutor in open court on March 25, 2010) that the plaintiff was at the Yonkers location at the time of the robbery. At the time of said Notice of Alibi, five witnesses, (Daniel "Danny" Duarte, Willmary Garcia, Hilda Garcia, Daniel Sullivan, Renaldo Robert), but not limited to those disclosed at that time, were available to testify at trial, all whom had addresses verified and disclosed to the Court and the prosecutor by the defense.

33. Witness Priscilla Velásquez testified before a Grand Jury that a robbery took place at El Tina Restaurant in the Washington Heights section of Manhattan, located on 500 207th Street in the County of New York. On or about February 20, 2010 at approximately 1:30-2:00 pm, she testified that she was present with her boyfriend Johuan Ramos seated at a table near the front door of the establishment, with her back towards the front door. At which time Mr. Ramos excuses himself from the table to go to the bathroom to wash his hands, which is located in the rear of the restaurant.

34. While Mr. Ramos is waiting to use the restroom (which is a one person bathroom), Ms. Velásquez testified that she saw a man pacing himself back and forth and allegedly making signals to the person standing behind her by the front door, with a camera and/or monitor facing the cash register.

35. She testified that she saw the same man walk out of the bathroom two to three minutes laster

but did not see Mr. Ramos walk out before or after him. After the man walks out, she realized that he closed the door after him and shut the light off. Furthermore, the witness testified that she walked to the door, the man is walking away, she looked at the man and noticed he had Mr. Ramos's ring on. She testified that she called Mr. Ramos's cell phone and that there was no answer. The witness testified that she tried to open the door and could not. At which time Mr. Ramos opened the door and was putting on his sneakers.

36. After which time, Ms. Velásquez testified that both she and her boyfriend, Mr. Ramos, ran out after the perpetrators of the robbery and followed three men who entered a car. She testified that she allegedly got a good look at them, but that it was very dark. The witness further testified that both her and Mr. Ramos called the police who came near there location on 256 207th Street in Manhattan and where they left their car and drove around with police in a patrol car to see if they could find the perpetrators. After the attempt to find them was not successful, she testified that both her and Mr. Ramos were taken by police to the 34th Precinct (NYPD) in Manhattan and were there from 3:30 am-4:00 to 12 pm that afternoon.

37. Soon after being brought the 34th precinct, Ms. Velásquez testified before a grand jury that she was shown a lineup of suspects for whom she may be able to identify as the perpetrators(s) of the aforementioned robbery that had just occurred. She testified that of the five men shown in a lineup, she chose, #3, Justin Robinson as the man who was outside of and had left the bathroom at the El Tina Restaurant.

38. After identifying Justin Robinson as the man who physically robbed Mr. Ramos at gunpoint in the bathroom of said restaurant, officers then showed Ms. Velásquez a second line up of suspects for whom she may be able to identify as one of the perpetrators of the aforementioned robbery that had just occurred. In the second lineup, Ms. Velásquez testified that she chose #4, Joseph Candelario, as one of the other persons who got into the car with the other man, whom she testified was pacing behind her.

39. Johan Ramos testified before a grand jury that he was a victim of a robbery at gunpoint while in the bathroom in the El Tina Restaurant located at 500 207th Street in the County of New York. He testified that a black male was the one who robbed at gunpoint in the bathroom and that there were two other perpetrators of the robbery. After trying to apprehend the perpetrators themselves

by chasing after them by car but then losing them, Mr. Ramos testified that he was told by police to leave his car and to get into a patrol car that would pick both him and Ms. Velásquez. Mr. Ramos testified that he, along with Ms. Velásquez, were brought to the 34th precinct 34th Precinct (NYPD) in Manhattan. He further testified that he was shown a lineup of five suspects that fit the description of the man that robbed him. While viewing the first line-up, Mr. Ramos chose and identified #3, Justin Robinson, as the man who robbed him at gunpoint in the bathroom of the El Tina Restaurant.

40. At no time during his testimony before the Grand Jury did Mr. Ramos testify that he identified the plaintiff, Joseph Candelario, as one of the perpetrators of the robbery.

41. Officer Moreno of the 34th Precinct, shield number 21165, NYPD, testified before a grand jury brought by the District Attorney of New York County. He testified that he responded to El Tina Restaurant by a radio call about a robbery that was in progress and was told that the complainant followed some individuals after being robbed. Officer Moreno further testified that at that point he had not spoken to the victim. He subsequently testified that he spoke with officers of the Yonkers Police Department and based on conversations with them he was told by Yonkers Police Department that they had some people in custody. Officer Moreno then testified that he then traveled to Yonkers at approximately 5:30 am on February 20, 2010 and pick up the two individuals, Justin Robinson and Joseph Candelario, already in custody by the Yonkers Police Department. He testified that he was not there for the circumstance of how they were taken into custody. At that time, he testified that he transported Mr. Robinson and the plaintiff Candelario to the 34th Precinct in Manhattan.

42. Officer Moreno further testified that he spoke with and were present during the lineups that Ms. Velásquez and Mr. Ramos participated in.

43. On September 24, 2010, witness Priscilla Velásquez testified in a pre-trial hearing that she saw a dark skinned man pacing back and forth in front of the bathroom while her boyfriend was occupying it wearing a leather jacket.. She testified that she saw the man walk in with other people and that one person she allegedly saw was light skinned but not able to see what he was wearing that was standing by the entrance but outside. Ms. Velásquez testified that she did not see the person that was behind her but only from a television security monitor for only a few seconds (because the other individual walked into the bathroom) with the camera that was facing the

entrance of the restaurant. She testified that she did not look at that individual, whom wrongfully identified as the plaintiff, Joseph Candelario.

44. Ms. Vasquez further testified that officers of the Yonkers Police Department showed both her and her boyfriend/robbery victim Mr. Ramos photos by passing said photos to them while they were in the back seat of the patrol car suggesting the plaintiff and testified that she was positive that the men that robbed Mr. Ramos were the ones she identified. She testified that they (her and Mr. Ramos) were asked if these were the men from the robbery. Ms. Valasequez testified that Mr. Ramos stated "No" in regards to the plaintiff and only recognized the person that robbed him and subsequently only identifying co-defendant, Justin Robinson.

45. She further testified on September 24, 2010 that the cohorts of the robbery were not making hand signals but were only looking at each other. She testified that the light skinned man had a red sweater on. On the night/early hour plaintiff was arrested he didn't have a red sweater or clothing on. Ms. Valasquez testified that when officer of the Yonkers Police Department had shown photos while in the patrol car in pursuit of the perpetrators, as well as all of the other witness, including police, testified that she as well as Mr. Ramos were shown photos of the plaintiff

46. Moreover, Ms. Valasquez testified that she could not describe any distinguishing characteristics of the male such as the shape of his nose, eyes, ears teeth or facial hair or jewelery, who was standing by the entrance of the restaurant whom she falsely identified the plaintiff as being, despite that he was a light skinned Hispanic with a red sweater (which the plaintiff did not wear that evening or day). She testified she only saw the that the accomplice by the door (the plaintiff falsely accused of being) for a few seconds, whom she described as being outside of the restaurant with neon lights on the front entrance window. In her testimony, Ms. Velásquez could not recall how many men ran or walked into the white impala following the robbery of Mr. Ramos.

47. In a preliminary hearing on September 22, 2010, Detective Thomas Taughran, shield number 5741 of the 34th Precinct of the NYPD, Robbery Apprehension Module (RAM), testified that on the night in question of February 20, 2010, he conducted the lineups that Ms. Valasquez and Mr. Ramos were shown. Detective Taughran testified that the victim Mr. Ramos and the witness Ms. Valasquez arrived together at approximately 4:30 am and seated together and interviewed by the Night Watch Division in the detective squad area. After they viewed the lineups, he testified they

were both brought back to RAM in Det. Taughran's office.

48. In his testimony, Det. Taughran testified that he conducted two lineups, both viewed in interview room #1 in the 34th Precinct in Manhattan. Det. Taughran testified that the first lineup was conducted at 11:43 am which Mr. Ramos viewed. In that lineup, Det. Taughran testified that Mr. Ramos identified #3, Justin Robinson, without hesitation, as the man that robbed him in the bathroom of the El Tina Restaurant earlier that morning. Det. Taughran further testified that following the lineup that Mr. Ramos viewed, he was seated next to Ms. Velásquez in the Robbery Apprehension Module area of the 34th precinct.

49. Detective Taughran then testified the same lineup that was shown to Ms. Velásquez following Mr. Ramos, Ms. Velásquez viewed and picked # 3, Justin Robinson as well. Det. Taughran then testified that the second lineup was conducted at 12:08, which the plaintiff was put in as #4. Det. Taughran testified that he put a blue sheet across the five fillers and put baseball caps with the hat shown in reverse, allegedly so it may cover the suspects hair and focus more on their facial hair. Det. Taughran testified that he brought Mr. Ramos into the lineup with Officer Moreno, and asked if he recognized anyone. Det. Taughran then testified that Mr. Ramos, the victim of the robbery in question, did not recognize any of the suspects in the police lineup which plaintiff was in. Immediately following Mr. Ramos, Ms. Velásquez viewed said lineup in which Det. Taughran testified chose the plaintiff, #4, because she allegedly recognized him from the camera in the restaurant.

50. Following the lineups, Det. Taughran testified that he conducted interviews, starting with the plaintiff first. He testified that he read plaintiff his Miranda warnings at 2:13 pm with Detective Sanchez and Officer Moreno present. Det. Taughran testified that the plaintiff stated that he was at the Tex Mex Restaurant & Bar in Yonkers, N.Y. all night with a friend named Danny Sullivan when he was arrested by the Yonkers Police Department.

51. Det. Taughran testified that the plaintiff was alert although plaintiff had been drinking. He admitted in his testimony that he did in fact show both witnesses before the lineups and testified to a document that indicated that Ms. Valasquez was shown a photo of the plaintiff, Joseph Candelario specifically as opposed to being shown a "photo array" consisting of six photos at a time.

52.   Det. Taughran admitted in his testimony that witness Priscilla Velásquez was only able to see the cohort whom was by the entrance of the restaurant for a few seconds through a camera monitor, whom she falsely identified as the plaintiff, Joseph Candelario. Furthermore, Det. Taughran also admitted in his testimony that Sgt. Rojas of the 34th Precinct of the NYPD had shown the photos of the plaintiff before the lineup.

53. Detective Enrique Sanchez testified on September 22, 2010 that co-defendant  Justin Robinson gave an oral statement to him on February 20, 2010 that he went to the restaurant on the night in question to buy cocaine and after tasting it became mad because he believed it was fake and wanted his money back. Det. Sanchez further testified that Justin Robinson also gave a written statement subsequent to his oral statement  stating that the plaintiff, Joseph Candelario had absolutely nothing to do with the robbery that took place at The El Tina Restaurant located at 500 207th Street In Manhattan. Det. Sanchez testified that Mr. Robinson stated, while with Officer Moreno, that it was not a robbery but a drug deal, that he tasted the cocaine and wanted his money back. Det. Sanchez further testified that Mr. Robinson stated "What does Joey (Candelario) have to do with this?"

54. Det Sanchez admitted on cross-examination that Justin Robinson stated that the plaintiff, Joseph Candelario, was not present at the restaurant on the night in question at all, nor the bathroom or any of that and did not try to make any further inquiries after Mr. Robinson's statement.

55. Sargent Bryant Pappas of the Yonkers Police Department (Municipal Housing Authority & City of Yonkers Housing Unit) testified on September 22, 2010 that on the night in question (February 19, 2010) that while in plain clothes and driving in an unmarked vehicle, proceeded up south Broadway, northbound when he noticed some individuals outside of the Tex Mex Bar, whom he dubbed the "Laurence Street Posse" comprised of Joseph Candelario, Justin Robinson, Danny Sullivan and Rene Delgado. Sgt. Pappas testified that he approached the plaintiff and asked him "Hey Joey, what's up? What are you doing? He stated the plaintiff replied "Nothing, just looking for girls" and had a brief conversation.

56. Sgt. Pappas falsely testified that the plaintiff was wearing a black leather jacket with rhinestones on the back of it whereas the plaintiff was wearing a dark colored hooded sweatshirt. He then testified that he left, turning around on South Broadway in Yonkers, southbound and testified that he allegedly saw the plaintiff and Mr. Robinson walking north on south Broadway

towards a white impala vehicle, got in, drove off south on South Broadway as he drove north. He then falsely testified that the plaintiff was driving the white impala.

57. Sgt. Pappas the testified that he received a radio call some time afterwards when he returned to the station that a white impala was involved in an armed robbery in New York City. He testified that he asked the dispatcher to contact units at the 50th precinct and if they had the victims, that he could assist because of his interaction earlier that evening with the plaintiff and Mr. Robinson and to meet them at his office at 28 Wells Avenue in Yonkers. After that time, Sgt. Pappas testified that Officer Gomez of the 50th precinct of the NYPD and his partner with a complaining witness and another witness told him that the victim had been robbed at gunpoint in Washington Heights and that the chased or followed the vehicle, at which time the victim went to the 50th precinct, got an officer, and they responded to Yonkers. He then testified that he asked the victim if he had seen the men that had robbed him and that Mr. Ramos indicated that he did. Sgt. Pappas testified that Mr. Ramos told him one of the men was tall, Spanish guy, light skinned and thin. Sgt. Pappas then testified that the victim stated the perpetrator that robbed Mr. Ramos in the bathroom of El Tina Restaurant and that he had a black flashy jacket with stones on the back and a New York Yankees cap on. He testified further that Mr. Ramos told him that the other was a younger, shorter guy, African-American and was wearing a dark hooded sweatshirt with a medium to thin build. Sgt. Pappas then testified that he told Officer Gomez that if would take them with him to 104 South Broadway or the 50th Precinct, he would see if he could locate the suspects and that he might know who the individuals are based strictly on his previous interactions with the plaintiff and Mr. Robinson earlier in the evening.

58. Sgt. Pappas testified that he then called Officer Richard Devito and told him that he was going to look for some suspects in a robbery that occurred in Manhattan and that he went right back to the Tex Mex Bar in Yonkers where he had seen the plaintiff and Mr. Robinson earlier that evening. He then testified that he went inside the Tex Mex Bar, saw the plaintiff on the dance floor, in which he was not wearing the alleged black leather rhinestone jacket but yet another person, Randy Hernandez, was wearing it. Sgt. Pappas admitted in his testimony he he could not nor was it established who the true owner of the jacket was. He further testified that he located a white impala on Valentine's Lane in Yonkers, eight to nine blocks from the Tex Mex Bar, and two blocks west. After he located the white impala, he then testified that he contacted the detectives of the 34th precinct.   Sgt. Pappas admitted on cross-examination that he supplied the photos of the plaintiff to

members of the New York City Police Department (Officer Gomez of the 50th precinct).

59. As a direct and proximate result of the acts and omissions of defendants, plaintiff continues to feel pain from the injuries caused by Defendant Officers Gomez, Elhadad of NYPD's 50th Precinct, Detective Sanchez of the NYPD, shield #6921, Detective Thomas Taughran, shield # 5741, Sargent Rojas, Detective Brian Checo, shield # 1406, Officer Moreno of the 34th Precinct of the NYPD, shield #21165 and Sargent Bryant Papas, shield #4, Officers Salierno and Richard Devito of the Yonkers (N.Y.) Police Department, City of Yonkers are sued both individually and in their official capacities. At all pertinent times, defendant officers and supervisors were employed by New York City Police Department and Yonkers (N.Y.) Police Department. and the other officers, was forced to suffer pain and mental cruelty, was deprived of physical liberty, and was forced to incur medical and legal expenses, depression, has been medically diagnosed with PTSD (Post Traumatic Stress Disorder), lack of sleep, suffered and suffers panic attacks while wrongfully incarcerated and after release, loss of significant other and children, loss of weight (50 lbs.), and suffering from paranoia of police on a daily basis at all times of the day and night.

60. At all times pertinent to these allegations, plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to defendants.

61. At no time did any of the officers from the NYPD or the Yonkers Police Department or any other defendant officer have probable cause to believe plaintiff had committed or was committing a crime.

62. Officers of the NYPD and Yonkers (N.Y.) and the other defendant officers acted with actual malice toward plaintiff and with willful and wanton indifference to and deliberate disregard for the statutory and constitutional rights of plaintiff. Officers of the NYPD and Yonkers (N.Y.) actions and the actions of the other defendant officers constitute unreasonable and excessive use of force and deprivation of liberty without due process of law.

63. Upon information and belief, at all times pertinent, the City of New York and Yonkers (N.Y.) permitted and tolerated a pattern and practice of unreasonable use of force by police officers of the NYPD and the Yonkers Police Department.

64. Upon information and belief, the City of New York and the City of Yonkers (N.Y.) has maintained a system of review of police conduct so untimely and cursory as to be ineffective and to permit and tolerate the unreasonable and excessive use of force by police officers.

65. The acts, omissions, systemic flaws, policies, and customs of the City of New York and the City of Yonkers (N.Y.) caused police officers of NYPD and the Yonkers Police Department to believe that the excessive and unreasonable use of force would not be aggressively, honestly, and properly investigated, with the foreseeable result that officers are more likely to use excessive or unreasonable force against plaintiff and others in the future. On or about November 4, 2010, witness Priscilla Velásquez appeared at a pre-trial hearing. Shortly before said hearing was to commence, she stated to the District Attorney of New York County that the plaintiff, Joseph Candelario was not the other perpetrator of the robbery that occurred on February 20, 2010 and confirmed in a photo array before said hearing. Subsequently, the Court lowered bail to $5,000.00 from $75,000.00 and the defendant made bail and was released. On or about January 13, 2011, all charges were dropped by the District Attorney against the plaintiff and cleared of any crime and exonerated.

**COUNT I: VIOLATION OF CONSTITUTIONAL RIGHTS Defendants** CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, Detective Enrique Sanchez, Individually and in his official capacity, Detective Brian Checo, Individually and in his official capacity, Detective Thomas Taughran, Individually and in his official capacity, Officer Gomez, Individually and in his official capacity, Sargent Rojas, Individually and in his official capacity, Officer Juan Moreno, Individually and in his official capacity, Officer Elhadad, Individually and in his official capacity, CITY OF YONKERS, YONKERS POLICE DEPARTMENT, Sargent Bryant Pappas, Individually and in his official capacity, Officer Richard Devito, Individually and in his official capacity, Officer Salierno, Individually and in his official capacity. (**Claim for Compensatory Damages)**

66. Plaintiff incorporates by reference paragraphs 1 through 65.

67. The intentional deprivation of constitutional and civil rights and due process of plaintiff by acts, under color of law, of coercion and wrongful over suggestiveness of plaintiff and acts of collusion to violate plaintiff's rights thereof by the aforementioned Defendants violated the rights of plaintiff as guaranteed by the Fourth, Fifth, and Eighth Amendments to the United States Constitution, for which defendant officers are individually liable.

**COUNT II: VIOLATION OF CONSTITUTIONAL RIGHTS** Defendants, CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, Detective Enrique Sanchez, Individually and in his official capacity, Detective Brian Checo, Individually and in his official capacity, Detective Thomas Taughran, Individually and in his official capacity, Officer Gomez, Individually and in his official capacity, Sargent Rojas, Individually and in his official capacity, Officer Juan Moreno, Individually and in his official capacity, Officer Elhadad, Individually and in his official capacity, CITY OF YONKERS, YONKERS POLICE DEPARTMENT, Sargent Bryant Pappas, Individually and in his official capacity, Officer Richard Devito, Individually and in his official capacity, Officer Salierno, Individually and in his official capacity. **(Claim for Exemplary Damages)**

68. Plaintiff incorporates by reference in paragraphs 1 through 67.

69. The intentional deprivation of constitutional and civil rights and due process of plaintiff by acts, under color of law, of coercion and wrongful over suggestiveness by the aforementioned defendants of the plaintiff and acts of collusion to violate plaintiff's rights thereof by the aforementioned Defendants when plaintiff was unarmed, had several alibi's and provided a Notice of Alibi thereafter and did not pose a threat of death or grievous bodily injury to defendants or others, when defendants had no lawful authority to arrest plaintiff or probable cause to arrest plaintiff, was done with actual malice toward plaintiff and with willful and wanton indifference to and deliberate disregard for the constitutional rights of plaintiff. Plaintiff is thus entitled to exemplary damages.

**COUNT III: VIOLATION OF STATUTORY CIVIL RIGHTS** Defendants, CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, Detective Enrique Sanchez, Individually and in his official capacity, Detective Brian Checo, Individually and in his official capacity, Detective Thomas Taughran, Individually and in his official capacity, Officer Gomez, Individually and in his official capacity, Sargent Rojas, Individually and in his official capacity, Officer Juan Moreno, Individually and in his official capacity, Officer Elhadad, Individually and in his official capacity, CITY OF YONKERS, YONKERS POLICE DEPARTMENT, Sargent Bryant Pappas, Individually and in his official capacity, Officer Richard Devito, Individually and in his official capacity, Officer Salierno, Individually and in his official capacity. **(Claim for Compensatory Damages)**

70. Plaintiff incorporates by reference paragraphs 1 through 69.

71. The intentional deprivation of constitutional and civil rights and due process of plaintiff by acts, under color of law, of coercion and wrongful over suggestiveness by the aforementioned defendants of the plaintiff and acts of collusion to violate plaintiff's rights thereof by the aforementioned Defendants of plaintiff, when plaintiff was unarmed and had several alibi's and provided a Notice of Alibi thereafter did not pose a threat of death or grievous bodily injury to defendants or others, when defendants had no lawful authority to arrest plaintiff, was done with actual malice toward

plaintiff and with willful and wanton indifference to and deliberate disregard for the statutory civil rights of plaintiff.

**COUNT IV: VIOLATION OF CONSTITUTIONAL RIGHTS** Defendants, CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, Detective Enrique Sanchez, Individually and in his official capacity, Detective Brian Checo, Individually and in his official capacity, Detective Thomas Taughran, Individually and in his official capacity, Officer Gomez, Individually and in his official capacity, Sargent Rojas, Individually and in his official capacity, Officer Juan Moreno, Individually and in his official capacity, Officer Elhadad, Individually and in his official capacity, CITY OF YONKERS, YONKERS POLICE DEPARTMENT, Sargent Bryant Pappas, Individually and in his official capacity, Officer Richard Devito, Individually and in his official capacity, Officer Salierno, Individually and in his official capacity. **(Claim for Compensatory Damages)**

72. Plaintiff incorporates by reference in paragraphs 1 through 71.

73. It was the policy and practice of *t*he City of New York and the City of Yonkers to employ certain police officers, including the aforementioned defendants.

74. It was the policy and practice of the City of New York and the City of Yonkers to authorize certain officers, including the aforementioned defendants to cover up the use of and acts of coercion of the witnesses that the plaintiff was one of the perpetrators of the said robbery despite the lack of probable cause to arrest or any actual violation justifying the issuance of a lawful arrest. This policy and practice of the City of New York and the City of Yonkers encouraged and caused constitutional violations by the aforementioned defendant police officers of NYPD, including the violation of plaintiff's constitutional rights by defendants of the Yonkers Police Department.

75. It was the policy and practice of the City of New York and the City of Yonkers to authorize certain officers, including the aforementioned defendants to deny and prevent prompt medical treatment of injured persons in the care and custody of *t*he NYPD and Yonkers Police Department, to prevent detained persons from making phone calls or seeking counsel, and to abuse verbally those detained persons who sought to assert these rights. These policies and practices of the City of New York and the City of Yonkers encouraged and caused constitutional violations by NYPD and

Yonkers police officers, including the violations of plaintiff's constitutional rights by the aforementioned defendants.

76. At all pertinent times, defendants New York City Police Department and Yonkers Police Department and other unknown supervisors who supervised the officers who unlawfully violated plaintiff's rights encouraged and tolerated the policies and practices. Defendants the City of New York and the City of Yonkers refused adequately to train, direct, supervise, or control defendant officers so as to prevent the violation of plaintiff's constitutional rights.

77. The aforementioned Defendants of the NYPD and Yonkers Police Department were acting within the scope of their employment and pursuant to the policies and practices of the City of New York. These policies and practices were enforced by the aforementioned defendants of the NYPD and Yonkers Police Department, and were the moving force, proximate cause, or affirmative link behind the conduct causing the plaintiff's injury. The City of New York and the City of Yonkers (N.Y.) and aforementioned police officer defendants are therefore liable for the violation of plaintiff's constitutional rights by the defendants.

**COUNT V: CONSPIRACY TO VIOLATE CIVIL RIGHTS** Defendants, CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, Detective Enrique Sanchez, Individually and in his official capacity, Detective Brian Checo, Individually and in his official capacity, Detective Thomas Taughran, Individually and in his official capacity, Officer Gomez, Individually and in his official capacity, Sargent Rojas, Individually and in his official capacity, Officer Juan Moreno, Individually and in his official capacity, Officer Elhadad, Individually and in his official capacity, CITY OF YONKERS, YONKERS POLICE DEPARTMENT, Sargent Bryant Pappas, Individually and in his official capacity, Officer Richard Devito, Individually and in his official capacity, Officer Salierno, Individually and in his official capacity. **(Claim for Compensatory Damages)**

78. Plaintiff incorporates by reference paragraphs one through 77.

79. The aforementioned Defendants of the NYPD and the Yonkers Police Department, conspired, under color of law, to violate plaintiff's statutory civil rights in violation of **42 U.S.C. § 1983**, for which defendants are individually liable.

**COUNTY VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** Defendants; CITY

OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, Detective Enrique Sanchez, Individually and in his official capacity, Detective Brian Checo, Individually and in his official capacity, Detective Thomas Taughran, Individually and in his official capacity, Officer Gomez, Individually and in his official capacity, Sargent Rojas, Individually and in his official capacity, Officer Juan Moreno, Individually and in his official capacity, Officer Elhadad, Individually and in his official capacity, CITY OF YONKERS, YONKERS POLICE DEPARTMENT, Sargent Bryant Pappas, Individually and in his official capacity, Officer Richard Devito, Individually and in his official capacity, Officer Salierno, Individually and in his official capacity. **(Claim for Compensatory Damages)**

80. Plaintiff incorporates by reference paragraphs 1 through 79.

81. The aforementioned Defendants intentionally deprived plaintiff of his constitutional and civil rights for their acts previously mentioned, under color of law, in a manner that was extreme, outrageous, and unjustified, and caused plaintiff to suffer physical and emotional distress for which the aforementioned defendants are individually liable.

**COUNT VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS,** Defendants CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, Detective Enrique Sanchez, Individually and in his official capacity, Detective Brian Checo, Individually and in his official capacity, Detective Thomas Taughran, Individually and in his official capacity, Officer Gomez, Individually and in his official capacity, Sargent Rojas, Individually and in his official capacity, Officer Juan Moreno, Individually and in his official capacity, Officer Elhadad, Individually and in his official capacity, CITY OF YONKERS, YONKERS POLICE DEPARTMENT, Sargent Bryant Pappas, Individually and in his official capacity, Officer Richard Devito, Individually and in his official capacity, Officer Salierno, Individually and in his official capacity. **(Claim for Exemplary Damages)**

82. Plaintiff incorporates by reference paragraphs 1 through 81.

83. The intentional deprivation of constitutional and civil rights and due process and instead maliciously abused the legal process, under color of law, directly involving the of plaintiff by defendants, were unjustified and done with actual malice and wanton indifference to and deliberate disregard for human life and the rights of plaintiff. Plaintiff is thus entitled to exemplary damages.

**COUNT IX: RESPONDEAT SUPERIOR LIABILITY,** Defendants CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, Detective Enrique Sanchez, Individually and in his official capacity, Detective Brian Checo, Individually and in his official capacity, Detective Thomas Taughran, Individually and in his official capacity, Officer Gomez, Individually and in his official capacity, Sargent Rojas, Individually and in his official capacity, Officer Juan Moreno, Individually and in his official capacity, Officer Elhadad, Individually and in his official capacity, CITY OF YONKERS, YONKERS POLICE DEPARTMENT, Sargent Bryant Pappas, Individually and in his official

capacity, Officer Richard Devito, Individually and in his official capacity, Officer Salierno, Individually and in his official capacity. **(Claim for Compensatory Damages)**

84. Plaintiff incorporates by reference paragraphs 1 through 83.

85. At all times pertinent here to, the aforementioned police officer defendants were acting within the scope and under color of law, of their employment as an officer of the New York  Police Department and the Yonkers (N.Y.) Police Department.

86. The City of New York and the City of Yonkers (N.Y.) is liable for compensatory damages under the doctrine of respondeat superior for the intentional torts of the aforementioned police officer defendants committed within the scope of their employment.

**COUNT X: RESPONDEAT SUPERIOR LIABILITY**, Defendants CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, Detective Enrique Sanchez, Individually and in his official capacity, Detective Brian Checo, Individually and in his official capacity, Detective Thomas Taughran, Individually and in his official capacity, Officer Gomez, Individually and in his official capacity, Sargent Rojas, Individually and in his official capacity, Officer Juan Moreno, Individually and in his official capacity, Officer Elhadad, Individually and in his official capacity, CITY OF YONKERS (N.Y.), YONKERS POLICE DEPARTMENT, Sargent Bryant Pappas, Individually and in his official capacity, Officer Richard Devito, Individually and in his official capacity, Officer Salierno, Individually and in his official capacity. **(Claim for Exemplary Damages)**

87. Plaintiff incorporates by reference paragraphs 1 through 86.

88. Defendant City of New York and City of Yonkers (N.Y.), through its agents, under color of law, expressly authorized defendants the aforementioned police officers in its employ to use excessive tactics; knew, through its agents, that the defendant officers had a propensity for committing intentional torts, using excessive and coercive acts in the line of duty; and acquiesced in the defendant's wrongful conduct. Plaintiff is thus entitled to exemplary damages against the City of New York and the City of Yonkers (N.Y.)  for the malicious conduct of defendants.

**COUNT XI: NEGLIGENCE** Defendants, CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, Detective Enrique Sanchez, Individually and in his official capacity, Detective Brian Checo, Individually and in his official capacity, Detective Thomas Taughran, Individually and in his official capacity, Officer Gomez, Individually and in his official capacity, Sargent Rojas, Individually and in his official capacity, Officer Juan Moreno, Individually and in his official capacity, Officer

Elhadad, Individually and in his official capacity, CITY OF YONKERS (N.Y.), YONKERS POLICE
DEPARTMENT, Sargent Bryant Pappas, Individually and in his official capacity, Officer Richard
Devito, Individually and in his official capacity, Officer Salierno, Individually and in his official
capacity. **(Claim for Compensatory Damages)**

89. Plaintiff incorporates by reference paragraphs 1 through 83.

90. The aforementioned Defendants, while acting as agents and employees for the City of New
York and City of Yonkers in their capacity as police officers for NYPD and Yonkers Police
Department under color of law, owed a duty to plaintiff to perform their police duties without the
use of excessive force. Defendants' use of force upon plaintiff, when plaintiff was unarmed and did
not pose a threat of death or grievous bodily injury to defendants or others constitutes negligence
for which the aforementioned police officer defendants are individually liable.

91. The aforementioned defendants use of force upon plaintiff when defendants had no lawful
authority to arrest nor probable cause to arrest plaintiff or to use force against plaintiff constitutes
negligence for which defendants are individually liable.

92. As a proximate result of defendants' negligent use of excessive force, plaintiff has sustained
permanent injuries and plaintiff has incurred medical bills and other expenses. These injuries have
caused and will continue to cause plaintiff pain and suffering, both mental and physical for the
wrongful imprisonment of an innocent man.

**COUNT XII: NEGLIGENCE** Defendants, CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, Detective Enrique Sanchez, Individually and in his official capacity, Detective Brian
Checo, Individually and in his official capacity, Detective Thomas Taughran, Individually and in his
official capacity, Officer Gomez, Individually and in his official capacity, Sargent Rojas, Individually
and in his official capacity, Officer Juan Moreno, Individually and in his official capacity, Officer
Elhadad, Individually and in his official capacity, CITY OF YONKERS (N.Y.), YONKERS POLICE
DEPARTMENT, Sargent Bryant Pappas, Individually and in his official capacity, Officer Richard
Devito, Individually and in his official capacity, Officer Salierno, Individually and in his official
capacity.**(Claim for Exemplary Damages)**

93. Plaintiff incorporates by reference paragraphs 1 through 92.

94. The negligent false arrest of the plaintiff of by the aforementioned defendants when plaintiff
was unarmed and did not pose a threat of death or grievous bodily injury to defendants or others,

and when defendants had no lawful authority or probable cause to arrest plaintiff or to use any force against plaintiff, was done with willful and wanton indifference to and deliberate disregard for human life and the rights of plaintiff. Plaintiff is thus entitled to exemplary damages.

**COUNT VIII: NEGLIGENCE**  Defendants CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, Detective Enrique Sanchez, Individually and in his official capacity, Detective Brian Checo, Individually and in his official capacity, Detective Thomas Taughran, Individually and in his official capacity, Officer Gomez, Individually and in his official capacity, Sargent Rojas, Individually and in his official capacity, Officer Juan Moreno, Individually and in his official capacity, Officer Elhadad, Individually and in his official capacity, CITY OF YONKERS (N.Y.), YONKERS POLICE DEPARTMENT, Sargent Bryant Pappas, Individually and in his official capacity, Officer Richard Devito, Individually and in his official capacity, Officer Salierno, Individually and in his official capacity. **(Claim for Compensatory Damages)**

95. Plaintiff incorporates by reference paragraphs 1 through 94.

96. At all times of the incident, the aforementioned defendants were acting within the scope of their employment as officers of the New York City Police Department and Yonkers Police Department and under color of law.

97. Defendant's City of New York and City of Yonkers (N.Y.) is liable for compensatory damages under the doctrine of respondeat superior for the negligence of defendants committed within the scope of their employment.

**COUNT XIV: NEGLIGENCE** Defendants;  City of New York and the City of Yonkers (N.Y.)
**(Claim for Compensatory Damages)**

98. Plaintiff incorporates by reference paragraphs 1 through 97.

99. Defendants City of New York and the City of Yonkers (N.Y.) owed a duty to plaintiff to train and supervise and otherwise control its police officers in the use of excessive force and other matters incidental to the exercise of police functions. Defendants City of New York and the City of

Yonkers (N.Y.) failed to provide adequate training, supervision, and control of aforementioned police officer defendants, which failure constitutes negligence.

100. As a proximate result of the City of New York and the City of Yonkers (N.Y.) negligent failure to provide adequate training, supervision, and control of the aforementioned police officer defendants, plaintiff has sustained permanent injuries and plaintiff has incurred and will continue to incur medical bills and other expenses. These injuries have caused and will continue to cause plaintiff pain and suffering, both mental and physical.

**COUNT XV: NEGLIGENCE** Defendants; City of New York and the City of Yonkers (N.Y.)
**(Claim Exemplary Damages)**

101. Plaintiff incorporates by reference paragraphs 1 through 100.

102. Defendant's City of New York and the City of Yonkers (N.Y.) failure to provide adequate training and supervision to its police officers constitutes a willful and wanton indifference and deliberate disregard for human life and the rights of private citizens, including plaintiff. Plaintiff is thus entitled to exemplary damages.

**COUNT XVI: MALICIOUS ABUSE OF PROCESS, FALSE ARREST, AND FALSE IMPRISONMENT,** Defendants CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, Detective Enrique Sanchez, Individually and in his official capacity, Detective Brian Checo, Individually and in his official capacity, Detective Thomas Taughran, Individually and in his official capacity, Officer Gomez, Individually and in his official capacity, Sargent Rojas, Individually and in his official capacity, Officer Juan Moreno, Individually and in his official capacity, Officer Elhadad, Individually and in his official capacity, CITY OF YONKERS, YONKERS POLICE DEPARTMENT, Sargent Bryant Pappas, Individually and in his official capacity, Officer Richard Devito, Individually and in his official capacity, Officer Salierno, Individually and in his official capacity.**(Claim for Compensatory Damages)**

103. Plaintiff incorporates by reference paragraphs 1 through 102.

103. The aforementioned police officer Defendants of the NYPD and Yonkers (N.Y.) under color of law used criminal process against plaintiff in order to intimidate plaintiff and to coerce and overly suggest the plaintiff dissuade plaintiff from asserting plaintiff's rights against defendants and

in order to cover up their own wrongdoing and to avoid civil and criminal liability for their own acts.

104. The aforementioned Defendants falsely arrested and falsely imprisoned plaintiff under color of law..

105. As a proximate result of this malicious abuse of process, false arrest, and false imprisonment, plaintiff suffered damages.

**COUNT XII: DENIAL OF MEDICAL TREATMENT**  Defendants, CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, Detective Enrique Sanchez, Individually and in his official capacity, Detective Brian Checo, Individually and in his official capacity, Detective Thomas Taughran, Individually and in his official capacity, Officer Gomez, Individually and in his official capacity, Sargent Rojas, Individually and in his official capacity, Officer Juan Moreno, Individually and in his official capacity, Officer Elhadad, Individually and in his official capacity, CITY OF YONKERS (N.Y.), YONKERS POLICE DEPARTMENT, Sargent Bryant Pappas, Individually and in his official capacity, Officer Richard Devito, Individually and in his official capacity, Officer Salierno, Individually and in his official capacity.

106. Plaintiff incorporates by reference paragraphs 1 through 105.

107. Plaintiff was entitled to medical treatment upon plaintiff's arrest and confinement and the aforementioned defendants deliberately and intentionally failed promptly to provide plaintiff with such medical treatment.

108. As a proximate result of this denial of medical treatment, plaintiff suffered damages.

WHEREFORE, plaintiff requests that this Court enter judgment against the defendants and award the following amounts:

a. $500,000 compensatory damages in favor of plaintiff;

b. $6,000,000.00 in exemplary damages in favor of plaintiff;

c. $4,000,000.00 in punitive damages and costs of this action, including reasonable attorney fees to

the plaintiff; and

d. Such other and further relief as the court may deem appropriate.

Dated: February 14, 2012

New York, NY

/s/

_____

Richard D. Borzouye, Esq.
Attorney for the Plaintiff
(Bar Code RB 3461)
14 Wall Street, 20th Floor
New York, NY 10005
(212) 618-146

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated: February 14, 2012
        New York, NY

*/s/*

_____

Richard D. Borzouye, Esq.
Attorney for the Plaintiff
(Bar Code RB 3461)
14 Wall Street, 20th Floor
New York, NY 10005
(212) 618-146