UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



JOSEPH CANDELARIO,

Plaintiff,

v.

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, Detective Enrique Sanchez,
Individually and in his official capacity, Detective Brian
Checo, Individually and in his official capacity, Detective
Thomas Taughran, Individually and in his official
capacity, Officer Gomez, Individually and in his official
capacity, Sergeant Rojas, Individually and in his official
capacity, Officer Juan Moren, Individually and in his
official capacity, Officer Elhadad, Individually and in his
official capacity, CITY OF YONKERS, YONKERS
POLICE DEPARTMENT, Sergeant Bryant Pappas,
Individually and in his official capacity, Officer Richard
Devito, Individually and in his official capacity, Officer
Salierno, Individually and in his official capacity,

Defendants.

12 Civ. 1206 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Chief United States District Judge:

Plaintiff Joseph Candelario ("Plaintiff") brings this action under 42 U.S.C. §1983 and

New York state law against Defendants City of New York, New York City Police Department

("NYPD"), City of Yonkers, Yonkers Police Department, NYPD officers Enrique Sanchez

("Sanchez"), Brian Checo ("Checo"), Thomas Taughran ("Taughran"), Gomez, Rojas, Juan

Moren ("Moren"), and Elhadad, and Yonkers Police officers Bryant Pappas ("Pappas"), Richard

Devito ("Devito"), and Salierno (collectively "Defendants").  Plaintiff asserts claims under

§1983 and state law for false arrest, malicious prosecution, malicious abuse of process,

1

conspiracy, and denial of medical treatment, and claims under state law for negligence and intentional infliction of emotional distress.

Defendants City of New York and NYPD move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, their motion is hereby GRANTED.  The other named Defendants have not moved to dismiss the claims against them, ostensibly because they have not been served.  The claims against these non-moving Defendants are, for the reasons set forth below, DISMISSED *sua sponte* without prejudice.

## BACKGROUND

At around 11:30 p.m. on February 19, 2010, Yonkers Police officers Pappas and Salierno noticed several individuals in front of the "Tex-Mex Bar" on South Broadway in Yonkers, New York, whom Pappas knew were associated with a local gang called the "Lawrence Street Posse." (Marutollo Decl., Ex. D. ("Supplementary Report"))[1]  Among these individuals were Plaintiff, who wore a black leather jacket with a rhinestone pattern affixed and a baseball cap, and Justin Robinson ("Robinson"), dressed in a dark-colored hooded sweatshirt.  (*Id*.)  Noticing these individuals were within the operating territory of a rival gang and on this basis becoming suspicious they were engaged in criminal activity, Pappas conducted a "stop and question" of the individuals.[2]  (*Id*; Marutollo Decl., Ex. A ("Complaint") ¶ 12.)[3]  After doing so, the officers recorded their activity and began to leave the area, at which time they noticed Plaintiff, Robinson, and a third man enter a white Chevrolet Impala with New York license plates #EWV-8684 and drive southbound.  (Supplementary Report at 1.)  Pappas phoned in the vehicle

---

[1] "Marutollo Decl." refers to the "Declaration of Joseph A. Marutollo in Support of City Defendants' Motion to Dismiss the Complaint," dated June 12, 2012.  "Marutollo Decl., Ex. D" refers to the "Yonkers Police Department Supplementary Report" related to the arrest of Plaintiff, dated February 20, 2010.
[2] The legality of the "stop and question" is not before the Court.
[3] "Marutollo Decl., Ex. A" refers to Plaintiff's Complaint, dated February 14, 2012.

information to headquarters and was informed that the car was registered to another member of the "Lawrence Street Posse" who was not present. (*Id.*)

Later that night, NYPD officers responded to a robbery at the El Tina Fish Market Restaurant on West 207th Street in Manhattan at around 2:30 a.m. (Complaint ¶ 18.)   The officers spoke with Johan Ramos ("Ramos"), the victim of the robbery, and his girlfriend Priscilla Velasquez ("Velasquez").   Velasquez told police that she and Ramos had been sitting at a table near the front of the restaurant and that shortly after Ramos left the table to use the restroom, three males entered the establishment.   (*Id.*)  One of the men entered the restroom behind Ramos and once inside, robbed him of $500 in cash, jewelry, and a cell phone.  (*Id.* ¶¶ 18-19, 24; Marutollo Decl., Ex. B ("Felony Complaint") at 2.)[4]  The other two stood by the restaurant entrance, where Velasquez was able to view one of them through the restaurant's surveillance monitor, noticing that he was pacing back and forth.  (Complaint ¶¶ 19, 30, 38.) After the first man exited the restroom, the three men fled the restaurant.

Once Ramos exited the restroom, he and Velasquez hurried to the front of the restaurant and spotted the perpetrators driving away from the scene in the same vehicle Yonkers police had seen earlier in the evening, a white Chevrolet Impala with New York license plates #EWV-8684. (Complaint ¶ 20; Felony Complaint at 2.)  They followed the vehicle for a short time in Ramos' car before calling the police and returning to the restaurant, where they met Defendants NYPD officers Gomez and Elhadad.  (Complaint ¶ 20.)  After unsuccessfully attempting to locate the vehicle, the officers took Ramos and Velasquez to the NYPD's 34th Precinct. (*Id.* ¶ 21.)

Meanwhile, Pappas was alerted by dispatchers that the Chevrolet Impala about which he had earlier inquired had reportedly been used in an armed robbery.  (Supplementary Report at 1.)

---

[4] "Marutollo Decl., Ex. B" refers to the felony complaint filed in Plaintiff's underlying criminal case, dated February 20, 2010.

Pappas contacted the NYPD and offered his assistance, at which time Gomez and Elhadad drove the witnesses to Pappas' office in Yonkers. (*Id.*, Complaint ¶ 21.)  Ramos told Pappas that he had been robbed by a "tall Hispanic male . . . wearing a black leather rhinestone jacket[,] a tall black male with a dark colored hooded sweatshirt, and a heavyset white male." (Complaint ¶ 24; Supplementary Report at 1.)  At some point, while the witnesses were sitting in the back of the NYPD police car, they were shown one or more photographs of Plaintiff by Pappas and NYPD officers.  (Complaint ¶ 21.)  Based on the complaint and the Yonkers Police Department Supplementary Report related to the arrest, it appears that Pappas then told the NYPD officers that he believed he knew the identities of the perpetrators and thereafter drove to Tex-Mex Bar along with Salierno and Devito to locate them.  (Complaint ¶¶ 25-26.)  Devito immediately detained Robinson outside of the bar as he attempted to enter a taxi. (Supplementary Report at 1.)  After radioing and waiting for back-up, the officers entered the bar and detained Plaintiff and other individuals, including another man wearing the black rhinestone jacket Plaintiff had been wearing earlier that night.  (*Id.*)  Robinson was "found to possibly have the fruits of the robbery," including rings and a watch matching the description victim provided of his stolen property. (*Id.*)  Plaintiff and Robinson were taken to Yonkers Police headquarters and thereafter transported to the NYPD's 34th Precinct by NYPD Lieutenant Moren.  (Complaint ¶ 27.)

Once Plaintiff was in NYPD custody, Moren and Defendant NYPD Detective Sanchez conducted separate lineups of Plaintiff and Robinson for each witness.  (Complaint ¶ 27.)  Velasquez identified Robinson as the man who robbed Ramos and identified Plaintiff as the man who had been waiting behind her near the front entrance of the restaurant. (*Id.* ¶¶ 28, 30, 37-38.)  Ramos also identified Robinson as the man who had robbed him in the restroom but was unable to identify Plaintiff from the lineup. (*Id.* ¶¶ 27, 29, 39.)

4

Later that morning, Yonkers police located the Chevrolet Impala several blocks from the Tex-Mex Bar and contacted the NYPD.  (Supplementary Report at 1-2.)  NYPD Officer Moren recovered a loaded 9 millimeter handgun from the trunk. (Complaint ¶ 32.)  Plaintiff was charged with Robbery in the First Degree under New York Criminal Procedure Law ("NYCPL") §160.15(2) and Criminal Possession of a Weapon in the Second Degree under NYCPL § 265(1)(b) and thereafter indicted. (Complaint ¶ 31.)  Prior to a November, 2010 pre-trial hearing, Velasquez informed the District Attorney of New York County that she believed Plaintiff was not the perpetrator of the crime.  Plaintiff was released from custody at some point thereafter, and all charges were dismissed on January 13, 2011. (Complaint ¶¶ 21, 65.)

Plaintiff filed the instant complaint on February 14, 2012. [dkt. no. 1.]  Defendants filed a motion to dismiss the action on June 12, 2012. [dkt. nos. 11-13.]  Plaintiff filed an opposition on August 23, 2012, and Defendants replied on September 14, 2012. [dkt. nos. 15-16.]

## DISCUSSION

### A.  <u>Standard of Review under Federal Rule of Civil Procedure 12(b)(6)</u>

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929, 949 (2007)).

Plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions" and more than "a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S at 555.  In addition, the facts pled in the complaint "must be enough to raise a right to relief above the speculative level."

*Id.* A district court considering a Rule 12(b)(6) motion must accept all factual allegations in the complaint as true, while also drawing all reasonable inferences in favor of the nonmoving party. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007); *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir. 1999).

**B.  Plaintiff's Claims Under 42 U.S.C. §1983**

42 U.S.C. §1983 grants private citizens the right to sue the state or individuals acting under color of law who violate the citizen's constitutional rights. *See* 42 U.S.C. § 1983. To establish an action under § 1983, a plaintiff must prove that (1) the defendant has deprived the plaintiff of a right secured by the "Constitution and laws" of the United States, and (2) the deprivation occurred "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." *See Adickes v. S.H. Kress,* 398 U.S. 144, 150 (1970).

**a.  *False Arrest***

Plaintiff claims he was falsely arrested in violation of 42 U.S.C. §1983. The elements necessary to state a claim for false arrest under § 1983 are the same as those necessary to state a claim for false arrest under New York law. *See Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). To state a claim for false arrest under New York law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified. *See Posr v. Doherty,* 944 F.2d 91, 97 (2d Cir.1991); *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995).

Defendants move to dismiss Plaintiff's false arrest claim on the basis that officers had probable cause to arrest him based on Velasquez's lineup identification and other evidence that Plaintiff was involved in the robbery. Probable cause to arrest is a complete defense to an action

for false arrest, even where a person is ultimately acquitted, because it constitutes justification. *Torraco v. Port Auth. of. N.Y. & N.J.,* 615 F.3d 129, 139 (2d Cir. 2010); *see also Weyant,* 101 F.3d at 852 (citing *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994)). "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991). The court must look at the "totality of the circumstances" and consider "the facts available to the officer at the time of arrest." *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002); *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). The focus is on the information available at the time; the subjective intent of an officer is irrelevant. *Espada v. Schneider,* 522 F.Supp.2d 544, 552 (S.D.N.Y.2007). In addition, a probable cause showing requires only a "probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Valentine,* 539 F.3d 88, 94 (2d Cir. 2008) (citing *Illinois v. Gates,* 462 U.S. 213, 244 n. 13 (1983)).

 Plaintiff argues that Velasquez's identification of him was the product of suggestive identification procedures and was therefore inadequate to support probable cause. Specifically, Plaintiff states that Velasquez "was shown, while in the back of the police car, some photos by the Bronx and Yonkers police and was coerced to believe and told that the plaintiff was the robber" and that officers "overly suggested and coerced both witnesses prior to viewing the lineup of the plaintiff." (Complaint ¶¶ 21, 31.) Based on the complaint, it appears that Plaintiff's claim is two-fold: that the lineup at which Velasquez identified Plaintiff was tainted by the fact that officers had earlier shown her one or more photographs of Plaintiff and that Defendants coerced Velasquez into stating that Plaintiff was involved in the robbery.

An identification procedure may be found "unduly and unnecessarily suggestive if it is based on police procedures that create 'a very substantial likelihood of irreparable misidentification.'" *Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009) (*citing Simmons v. United States*, 390 U.S. 377, 384 (1968)). Whether an identification procedure was unnecessarily suggestive depends on the suggestiveness and the necessity of the procedure. *See United States v. Bautista*, 23 F.3d 726, 730 (2d Cir. 1994). As such, even suggestive identification procedures are permissible as long as they are not unnecessarily so. *Brisco*, 565 F.3d at 88. Show-ups, in which a witness is shown a single photograph of a suspect or the suspect in person, are "inherently suggestive" and "generally disfavored." *Id.*; *see Stovall v. Denno*, 388 U.S. 293, 302 (1967) ("The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned.") Show-ups are also important investigative tools, however, that "may be necessary in [some] circumstances to quickly confirm the identity of a suspect, or to ensure the release of an innocent suspect." *Brisco v. Ercole*, 565 F.3d at 88-89. Such procedures are permissible, especially when "held in close temporal and geographic proximity to the crime scene" as a necessary method to ensure that authorities detain the actual perpetrators of a crime. *Id.* As such, "a show-up procedure may appropriately be used to establish probable cause." *Williams v. City of New York*, 2012 WL 511533, at *8 (E.D.N.Y. Feb. 15, 2012) (*citing Brisco*, 565 F.3d at 91.)

Defendants' conduct was permissible under the circumstances. Based on the complaint and the Supplementary Report, Defendants showed Velasquez and Ramos the photograph or photographs of Plaintiff shortly after the robbery in order to determine whether he had been involved. Not until after the officers had thereby confirmed Plaintiff's involvement did officers

return to the Tex-Mex Bar to arrest Plaintiff and Robinson.  Plaintiff has not alleged that Velasquez's lineup identification was otherwise conducted in an impermissibly suggestive manner.  The fact that Ramos was unable to pick Plaintiff out of the lineup, even after being shown a photograph of him, bolsters Defendants' claim that the lineup was not tainted.

As such, neither the show-up nor subsequent lineup were impermissibly suggestive, and Plaintiff's claim that Defendants' cannot base probable cause on these procedures is without merit.  Furthermore, the "[c]oncerns about reliance on tainted evidence to convict a defendant at trial do not apply with nearly the same force when such evidence is used to establish probable cause."  *See Williams v. City of New York*, 2012 WL 511533, at *7 (E.D.N.Y. Feb. 15, 2012). Probable cause is a fluid concept that "demands much less certainty than that required for a criminal conviction" and as such "the relevant inquiry for purposes of probable cause is whether the flaws in the [identification] procedures increased the risk of a misidentification to an extent that the resulting identification no longer supports the requisite probability that the suspect has perpetrated a crime."  *Id.* at *7-8; *see De Michele v. City of New York*, 2012 WL 4354763, at *10-11 (S.D.N.Y. Sep. 24, 2012).

Because the identification procedure was not impermissibly suggestive for purposes of probable cause, Defendants acted reasonably in relying on the identification made by Velasquez, who later testified that although it was dark outside, she "got a good look" at the three men involved in the robbery. (Complaint ¶¶ 33, 36.)  An "eyewitness's unequivocal identification of an individual as the perpetrator of the crime generally establishes probable cause, as long as it is reasonable to believe the eyewitness under the circumstances."  *Williams*, 2012 WL 511533 at *5; *Singer,* 63 F.3d at 119 (concluding that an unequivocal identification of a suspect by an eyewitness is sufficient to provide probable cause); *Miloslavsky v. AES Eng'g Soc'y, Inc*., 808

F.Supp. 351, 355 (S.D.N.Y. 1992)("a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth"), *aff'd* 993 F.2d 1534 (2d Cir. 1993).

Plaintiff's allegation that the eyewitnesses were coerced into stating that Plaintiff was involved in the robbery is insufficiently supported.  Rather than providing specific facts demonstrating how Defendants acted improperly, Plaintiff makes bare and unsupported claims that Defendants "coerced" the witnesses in an "overly suggest[ive]" manner.  (*See* Complaint ¶¶ 21, 31.)  In doing so, Plaintiff asserts a conclusion rather than discrete facts underlying that assertion.  At this stage, specific facts are entitled to the assumption of truth, but legal conclusions are not.  *Iqbal*, 556 U.S. at 681 (where "allegations are conclusory [they] are not entitled to be assumed true.")  Accordingly, Plaintiff's claim that Defendants lacked probable cause on the basis of coercing Velasquez is insufficiently pleaded.

Defendants had probable cause to arrest Plaintiff under the totality of the circumstances in light of "the facts available to the officer[s] at the time of the arrest."  *See Ricciuti,* 124 F.3d at 128.  At the time they arrested Plaintiff, officers possessed the following information:  Plaintiff, Robinson, and a third man had driven away from Tex-Mex Bar in a white Chevrolet Impala with license plates #EWV-8684, the same vehicle driven by the three men who robbed Ramos at the El Tina restaurant a few hours later and from which a gun was recovered later that morning; at the time they were seen leaving Tex-Mex Bar, Plaintiff wore a black leather jacket with a rhinestone pattern, and Robinson wore a dark-colored hooded sweatshirt, the same clothing worn by two of the men who robbed Ramos; Plaintiff and Robinson were together at 11 p.m. and at 4:30 p.m.; Velasquez got a "good look" and identified Plaintiff out of a lineup; and both Ramos and Velasquez identified Robinson as the man who robbed Ramos.  *See Jenkins v. City of New*

*York*, 478 F.3d 76, 90-91(2d Cir. 2007) (an individual's "presence in the company of an individual suspected of criminal activity, and the fact that he matches even a vague description provided by a witness, are certainly factors to be considered in evaluating probable cause.")

Because Defendants had probable cause to arrest Plaintiff, his §1983 false arrest claim is dismissed.

### b. *Malicious Prosecution*

Although it is not entirely clear, Plaintiff appears to assert a malicious prosecution claim under §1983.  To prevail, a plaintiff must establish the elements of malicious prosecution under state law, and then show that her Fourth Amendment rights were violated after legal proceedings were initiated.  *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010); *see Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002).  To state a claim for malicious prosecution under New York law, a plaintiff must prove: "(1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997).

The "existence of probable cause is a complete defense to a claim of malicious prosecution in New York."  *Savino v. New York*, 331 F.3d 63, 72 (2d Cir. 2003).  The "relevant probable cause determination is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced."  *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999).  Probable cause to prosecute "is a distinct inquiry from an inquiry into the existence of probable cause to arrest."  *Carrow v. New York*, 2010 WL 1009996, at *8 (S.D.N.Y. 2010) (citing *Posr*, 180 F.3d at 417.)  Even when probable cause exists at the time of the arrest, evidence that surfaces later could eliminate probable cause for the purposes of

a malicious prosecution claim. *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 573 (2d Cir.1996);

*Johnson v. City of New York*, 2010 WL 2292209 at *6 (S.D.N.Y. June 7, 2010) (a plaintiff in a

malicious prosecution action "must establish that probable cause somehow 'dissipated' between

the time of arrest and the commencement of the prosecution.")  "In order for probable cause to

dissipate, the groundless nature of the charges must be made apparent by the discovery of some

intervening fact." *Lowth*, 82 F.3d at 571.

  The burden falls on Plaintiff to demonstrate the dissipation of probable cause because

Plaintiff's indictment by a grand jury creates a presumption that the arrest and indictment were

supported by probable cause. *Manganiello*, 612 F.3d at 162-63; *Savino*, 331 F.3d at 73 (a

malicious prosecution plaintiff "bears the burden of proof in rebutting the presumption of

probable cause that arises from the indictment.")  In a §1983 malicious prosecution claim, this

presumption "may be rebutted only by evidence that the indictment was procured by 'fraud,

perjury, the suppression of evidence or other police conduct undertaken in bad faith.'"

*Manganiello*, 612 F.3d at 162-63 (quoting *Savino*, 331 F.3d at 72.)

  Plaintiff's malicious prosecution claim appears to be based on his allegations that

Defendants failed to investigate his alibi and did not inquire further into a statement made by

Robinson exculpating Defendant.  Plaintiff claims he "had been at the Tex-Mex Bar in Yonkers

all evening and provided [Defendant with] a list of several alibis, all of whom verified [his]

whereabouts."  (Complaint ¶ 16.)  Plaintiff's claim is meritless because once police have

probable cause, they are not obligated to conduct an investigation into all of Plaintiff's asserted

defenses or alibis. *Poux v. County of Suffolk*, 2012 WL 1020302, at *26 (E.D.N.Y. 2012) ("a

claim that a law enforcement officer could have done a more thorough investigation, or even that

the officer made mistakes in conducting an investigation, is insufficient to establish a cause of

action for malicious prosecution."); *Gisondi v. Town of Harrison*, 120 A.D.2d 48, 53 (2d Dept.

1986) ("[p]olice officers need not conduct an investigation which exculpates an arrestee.")  As

such, any failure to do so "does not vitiate the existence of probable cause to arrest or prosecute."

*Gaston v. City of New York*, 851 F.Supp.2d 780, 791 (quoting *Nelson v. Hernandez*, 524

F.Supp.2d 212, 224 (E.D.N.Y. 2007)).  The "mere assertion of an alibi, and even the failure to

investigate such an alibi to plaintiff's satisfaction, does not overcome the existence of probable

cause to prosecute 'where there is no evidence of fraud or suppression of evidence.'"  *Dukes v.

City of New York,* 879 F.Supp. 335, 343 (quoting *Gisondi*, 120 A.D.2d at 53.)

     Plaintiff also claims Defendants were aware of evidence exculpating Plaintiff but did not

sufficiently investigate this information.  Specifically, Plaintiff claims that on February 20, 2010,

the day Plaintiff was arrested, Robinson confessed to the robbery to Defendants NYPD Detective

Sanchez and Lieutenant Moren, telling these officers that Plaintiff "had absolutely nothing to do

with the robbery" and that he subsequently provided a written statement to that effect.

(Complaint ¶ 53.)  Plaintiff claims that officers "did not try to make any further inquiries" after

learning this information. (*Id*. ¶ 54.)  A claim that police simply failed to investigate or "could

have done more or could have disclosed more" is inadequate because "plaintiff must demonstrate

that the defendants deviated egregiously from accepted practices of investigation or otherwise

engaged in conduct that shocks the conscience."  *Poux,* 2012 WL at *26 (*citing Dukes*, 879

F.Supp.at 342); *see Hernandez v. State*, 644 N.Y.S.2d 380, 382 (1996) ("where it can be shown

that the conduct of the police deviated so egregiously from acceptable police activity as to

demonstrate an intentional or reckless disregard for proper procedures, the presumption of

probable cause may be overcome.")

Taking the facts asserted in the complaint as true, Plaintiff has not alleged that Defendants acted improperly or failed in any way to follow regular investigative procedures after Robinson told them that Plaintiff was not involved in the robbery.  To the contrary, after Robinson made a verbal statement exculpating Plaintiff, Defendants had Robinson make a written statement to that effect. (*See* Complaint ¶ 53.)

Furthermore, Plaintiff fails to allege any facts indicating that Defendants withheld this information, falsified any evidence, or made any misstatement to the District Attorney or the grand jury.  "Any alleged failure to conduct further investigation or apply all procedures that could have been followed does not amount to fraud, bad faith or the suppression of evidence and is insufficient to overcome the presumption" of probable cause created by the indictment.  *Gil v. County of Suffolk*, 590 F.Supp. 2d 360, 370 (E.D.N.Y. 2008) (*citing Colon v. City of New Yor*k, 60 N.Y.S.2d 78, 82-83 (1983) ("The presumption [of probable cause] may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the grand jury or to the district attorney, that they have misrepresented or falsified evidence, [or] that they have withheld evidence or otherwise acted in bad faith.")  Plaintiff fails to allege facts that, if true, establish fraud, perjury, or the misrepresentation of evidence that could rebut the presumption of probable cause arising from his indictment, and any such finding would be impermissibly speculative.  "Mere conjecture and surmise that an indictment was procured as a result of conduct undertaken by defendants in bad faith cannot overcome the presumption of probable cause created by an indictment."  *Gil*, 590 F.Supp. 2d at 369 (*citing Colon*, 60 N.Y.S.2d at 82).

Viewing the facts asserted in the complaint in the light most favorable to Plaintiff, he has not stated a claim for malicious prosecution under §1983.  Accordingly, this claim is hereby dismissed.

### c. *Malicious Abuse of Process*

Plaintiff asserts a malicious abuse of process claim.  Claims for "malicious prosecution and abuse of process are closely allied."  *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).  Whereas malicious prosecution concerns the improper issuance of process, malicious abuse of process concerns "the improper use of process after it is regularly issued." *Id.*  In order to state a malicious abuse of process claim, a plaintiff must show that a defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Id.*  A plaintiff may not simply allege an improper motive behind an arrest or prosecution.  Instead, to adequately allege the "collateral objective" element, Plaintiff must allege "not that the defendant acted with an improper motive, but rather an improper purpose – that is, 'he must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.'"  *Douglas v. City of New York*, F.Supp.2d 233, 344 (S.D.N.Y. 2009) (*citing Savino*, 331 F.3d at 77-78).

Plaintiff has not adequately alleged the "collateral objective" element of his abuse of process claim.  Plaintiff claims that Defendants "used criminal process against plaintiff in order to intimidate plaintiff and to coerce and overly suggest [and] dissuade plaintiff from asserting [his] rights against defendants and in order to cover up their own wrongdoing and to avoid civil and criminal liability for their own acts."  (Complaint ¶ 103.)   This bare allegation is

unsupported by specific facts indicating that Defendants had a collateral objective in arresting and prosecuting Plaintiff and is therefore inadequate to support an abuse of process claim.

Accordingly, Plaintiff's abuse of process claim is dismissed.

### d. *Conspiracy*

Plaintiff claims that Defendants are liable under §1983 for conspiracy.  A §1983 conspiracy claim requires Plaintiff to allege 1) an agreement between two or more state actors or a state actor and a private party, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal causing damages.  *Pangburn v. Culbertson,* 200 F.3d 67, 72 (2d Cir. 1999); *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002).

Plaintiff alleges that Defendant Detective Checo "conspired with Yonkers and Bronx police to fabricate a false case on the Plaintiff" and that Sergeant Pappas of Yonkers Police Department provided photographs of Plaintiff to the NYPD.  (Complaint ¶¶ 6, 21.)  Plaintiff does not allege any facts with particularity to support a conspiracy claim, however, including any facts relating to any agreement among the parties.  Conspiracy claims "containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed."  *Ciambriello*, 292 F.3d at 325.

Plaintiff's conspiracy claim is accordingly dismissed.

### e. *Denial of Medical Treatment*

Plaintiff claims that as a result of "defendants' negligent use of excessive force, [he] has sustained permanent injuries and [] has incurred medical bills and other expenses" and that "defendants deliberately and intentionally failed promptly to provide plaintiff with [] medical treatment."  (Complaint ¶¶ 92, 107.)  To establish a claim arising out of inadequate medical care, a plaintiff must prove that defendant exhibited deliberate indifference to a serious medical need.

*Chance v. Armstrong*, 143 F.3d 698, 702 (2d. Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).[5]

Plaintiff withdraws this claim in his reply papers.  Furthermore, this claim is without merit as Plaintiff has not alleged any facts that court support an excessive force claim, nor that he needed or was denied medical treatment.

### f.  *Plaintiff's Claims against Defendants City of New York and Yonkers*

Plaintiff asserts a §1983 claim against Defendants City of New York and City of Yonkers, claiming they "permitted and tolerated a pattern and practice of unreasonable use of force by police officers," "maintained a system of review of police conduct so untimely and cursory as to be ineffective," and that their "acts, omissions, systematic flaws, policies, and customs" resulted in NYPD and Yonkers police using excessive force. (Complaint ¶¶ 63-65.)

A "local government may not be sued under §1983 for an injury inflicted solely by its employees or agents."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To sustain a §1983 claim against a local government, a plaintiff must demonstrate that a policy, ordinance, regulation, or decision adopted by the municipality, and implemented by its employee.  *Monell,* 436 U.S. at 691-92.  The plaintiff must also demonstrate a sufficient causal relationship between the violation and the municipal policy or practice.  *Id.*  The government as an entity can only be held liable if the plaintiff demonstrates a sufficient causal relationship by showing that "execution of [the] government's policy or custom" inflicts the injury.  *Id.*

In addition, a policy may be established by showing that the acts of the municipal agent were part of a widespread practice that, although not expressly authorized, constitutes a custom or usage of which the supervising policy-maker must have been aware.  *See, e.g., Connick v.*

---

[5] Claims by a pre-trial detainee for denial of medical treatment under §1983 are analyzed under the same standard as §1983 claims brought under the Eighth Amendment.  *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009); *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000).

*Thompson*, 131 S.Ct. 1350 (2011).  A plaintiff asserting municipal liability for failure to train or supervise its employees must demonstrate that the municipality failed to do so at a level rising to deliberate indifference and that any constitutional violation resulted from that deliberate indifference.  *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 128-31 (2d Cir. 2004); *City of Canton v. Harris,* 489 U.S. 378, 388 (1989); *see Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (stating that a policy may be inferred where the municipality "so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.")

Plaintiff has failed to identify any policies or customs of Defendants New York City and Yonkers under which Defendants may have violated Plaintiff's rights.  Nor has Plaintiff alleged facts that, if true, could support a finding that these policies or customs, or the lack thereof, resulted in any injury to him.

Accordingly, Plaintiff's claims against Defendants City of New York and Yonkers are dismissed.

### g.  *Plaintiff's Claims Against NYPD*

Plaintiff's claims against the NYPD are dismissed because the NYPD, as an agency of the City of New York, is a non-suable entity.  *Jenkins v. City of New York*, 478 F.3d 76, 93 (2d Cir. 2007) (quoting New York City Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.")).

### C.  **Plaintiff's Claims under New York state law**

Plaintiff asserts claims under New York state law for negligence and intentional infliction of emotional distress.  (Complaint ¶¶ 82-83, 89-102).  Defendant argues these claims must be

dismissed because of Plaintiff's failure to comply with New York Notice of Claim requirements. New York General Municipal Law §50-e requires a plaintiff asserting state tort law claims against a municipal entity or its employees to file a Notice of Claim within ninety days after such claim arises, and to commence the action within a year and ninety days from the date of which the cause of action accrues. *See, e.g., Warner v. Goshen Police Dep't,* 256 F.Supp.2d 171, 175 (S.D.N.Y. 2003); *Burks v. Nassau Cnty. Sheriff's Dep't,* 288 F.Supp.2d 298, 301 (E.D.N.Y. 2003). Plaintiff concedes that his state law claims are subject to dismissal. (*See* Pl. Mem. Opp. Dismiss at 23.)[6] Accordingly, Plaintiff's state law claims are dismissed.

### D. <u>Service of Process</u>

Defendants City of New York and NYPD assert that individual Defendants Sanchez, Checo, Taughran, Gomez, Rojas, Moren, and Elhadad have not been served and have not moved for dismissal, but state that "the claims brought against them can be dismissed for the same reasons set forth [in Defendants' memorandum of law in support of dismissal.]" (*See* Defs. Mem. Supp. Mot. Dismiss at 1.)[7] As stated above, Defendants Yonkers, Yonkers Police Department, and individual Defendants Pappas, Salierno, and Devito have also not been served and have not moved for dismissal. This Court will consider whether dismissal is appropriate under Rule 4(m).

Federal Rule of Civil Procedure 4(m) provides, in pertinent part:

> If a defendant is not served within 120 days after the complaint is filed, the court – upon motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that serve be made within a specific time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

---

[6] "Pl. Mem. Opp. Dismiss" refers to Plaintiff's "Memorandum of Law in Partial Opposition to the City Defendants' Motion to Dismiss," dated August 23, 2012.

[7] "Defs. Mem. Supp. Mot. Dismiss" refers to "Defendants City of New York and New York City Police Department's Memorandum of Law in Support of their Motion to Dismiss the Complaint Pursuant to Fed.R.Civ.P. 12(b)(6)," dated June 12, 2012.

There is no indication in the record that Plaintiff has even attempted to serve Defendants.  Plaintiff, represented by counsel, learned that Defendants had not been served on May 2, 2012, at the very latest, when Defendants Yonkers, Yonkers Police Department, Pappas, Devito, and Salierno included insufficient service of process as an affirmative defense in their answer to the complaint. [*see* dkt. nos. 4-7.]  On May 4, 2012, Plaintiff retained new counsel to represent him in this matter [*see* dkt. nos. 8-9], and three days later Defendant New York City submitted a letter to the Court indicating that the individual Defendant NYPD officers had not been served.  [*see* dkt. no. 10.]  At this point, Plaintiff still had well over a month to timely serve Defendants yet did not do so.

Even absent good cause, district courts have discretion to extend the 120-day deadline, but Plaintiff has done nothing to correct this deficient service and has advanced no excuse for this failure, even one falling short of good cause.  *See Zapata v. City of New York*, 502 F.3d 192, 196-97 (2d Cir. 2007).  Accordingly, this Court declines to provide Plaintiff an extension of time to serve Defendants.  Furthermore, any extension would be futile because Plaintiff's claims are without merit, for the reasons explained above.

## CONCLUSION

For the reasons set forth above, this action is hereby DISMISSED as to moving Defendants New York City and NYPD for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  For the same reasons, Plaintiff's claims against non-moving Defendants Yonkers and Yonkers Police Department are DISMISSED *sua sponte* under Rule 12(b)(6).  Plaintiff's claims against non-moving Individual Defendants Sanchez, Checo, Taughran, Gomez, Rojas, Moren, Elhadad, Pappas, Devito, and Salierno are DISMISSED *sua sponte* under Federal

Rule of Civil Procedure 4(m) for failure to serve process.  Even if Defendants had been timely

served, the claims against them are without merit and subject to dismissal under Federal Rule of

Civil Procedure 12(b)(6).

SO ORDERED.

Dated:          New York, New York
                March 29, 2013

                                    _____
                                    LORETTA A. PRESKA, Chief U.S.D.J.

21